**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 08-cv-00861-CMA

LOYE L. REDDING,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

---

**ORDER AFFIRMING ADMINISTRATIVE LAW JUDGE'S DECISION**

---

### I.  OVERVIEW

This is a social security benefits appeal brought under 42 U.S.C. § 405(g). Plaintiff Loye L. Redding challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for social security disability benefits. The denial was affirmed by an administrative law judge ("ALJ"), who ruled Plaintiff was not disabled within the meaning of the Social Security Act ("Act"). Plaintiff argues, generally, that "if my neurologist finds me disabled . . . Social Security can do no less." (Doc. # 4 at 1.)  In particular, she argues that the ALJ committed two errors:

    (1)    The ALJ improperly assessed Plaintiff's credibility and RFC at step four of the process, by not considering that Plaintiff experienced pain and other symptoms of fibromyalgia which do not "present in Pes (physical examinations) or xrays."

>   (2)   The ALJ improperly gave greater weight to the opinion of examining physician Laura Moran, M.D., than to the opinion of treating physician Nicholas Christoff, M.D.

Plaintiff requests an order granting a favorable decision.  (Doc. # 20 at 4.)  After considering her arguments and those of Defendant, as shown below, the ALJ's opinion is AFFIRMED.

## II.  FACTS

### A.   MEDICAL EVIDENCE

Plaintiff was born on February, 15, 1951, and was 53 years old at the onset of her alleged disability.  (Doc. # 17 at 58, 66-67.)  Plaintiff completed high school and one year of college.  *(Id.* at 72.)  She has worked in the vocationally relevant past as accounting assistant, account manager, compliance officer, accounting manager, reconciliation specialist, and vice president.  *(Id.* at 23, 74-80.)  Plaintiff alleges that she became disabled on November 15, 2004, due to arthritis, hypertension, headaches, chest and joint pain, stroke, high blood pressure, and breathing problems.  (*Id.* at 58, 66-67.)

In July 2004, four months before her alleged onset date, Plaintiff visited with two doctors at the Carson-Tahoe Hospital.  John K. Bowers., M.D., and Basil E. Chryssos, M.D., treated Plaintiff after she complained of chest pain and headaches.  Plaintiff underwent several objective tests including a brain MRI, a chest x-ray, an echocardio-gram ("EKG"), and nuclear scan.  The nuclear stress test was negative.  *(Id.* at 169.)

2

It showed no evidence of ischemia or infarction. (*Id.*) The EKG revealed a small pericardial effusion; Plaintiff had apparently contracted a viral syndrome which gave her pericarditis. Plaintiff's heart size was normal, her lungs were clear, her brain volume was normal and no acute ischemia or infarction was identified. (*Id.* at 167, 170*.)*

On August 11, 2005, Laura Moran, M.D., performed a consultive examination of Plaintiff. (*Id.* at 212-216.) Plaintiff complained of arthritic pain, hypertension, and breathing problems. However, she had no inflammation or deformity in the joints and maintained excellent range throughout the spinal components and extremities, with the exception of the right wrist, where extension was limited to 60 degrees. Dr. Moran noted that Plaintiff's records did not mention any history of arthritis. Dr. Moran was also "unsure what was causing [Plaintiff's] somatic complaints. *(Id.* at 212.) Overall, Dr. Moran stated that Plaintiff's "functioning is excellent." Plaintiff could sit eight hours but should get up and stretch every hour; stand and walk for at least 30 to 45 minutes, sit down for five to 10 minutes, and resume walking, all for up to four to six hours per day; lift light objects weighing up to 20 pounds; bend, but not repetitively; squat as necessary; and crawl. (*Id.* at 216.)

In January 2007, Dr. Christoff examined Plaintiff. *(Id.* at 253-54.) Plaintiff complained of dizziness and loss of balance. She stated that she had headaches, numbness in the hands and feet, shoulder and hip discomfort, and exhausted easily. Dr. Christoff found that Plaintiff had a weak grip but no specific loss of strength. Moreover, Plaintiff's joints were not swollen or deformed.

3

In February 2007, Dr. Christoff completed a physical capacity evaluation form on behalf of Plaintiff.  *(Id.* at 256.)  Dr. Christoff wrote that Plaintiff could sit for two hours and stand/walk one hour in an eight-hour day; she needed to lie down periodically throughout the day; she could use her hands and lift/carry 10 pounds occasionally; and she would miss more than two days of work every month.  Dr. Christoff also stated that the limitations he assessed had been present for more than two years.  *(Id.*)

Plaintiff visited with Dr. Christoff several more times after the ALJ hearing. *(Id.* at 263-265; Doc. # 20 at 5-8.)  During one such visit, Dr. Christoff relates that in September 2007, Plaintiff developed anal cancer.  (Doc. # 20 at 5.)  Plaintiff was treated with radiation and chemotherapy.  According to this report, dated July 2008, her pain levels worsened and she developed some numbness in her foot.  *(Id.*)  In addition, what Dr. Christoff once characterized as "possible fibromyalgia" he now describes as fibromyalgia.  (*Id.* at 6.)

**B.    PROCEDURAL HISTORY**

On April 5, 2005, Plaintiff filed an application for disability insurance benefits. (Doc. # 17 at 12.)  The Social Security Administration denied Plaintiff's applications on October 4, 2005.  (*Id.*)  Plaintiff requested a hearing before an ALJ and initially appeared at a hearing on January 30, 2007.  However, soon after it began the hearing was postponed to await additional medical evidence.  *(Id.)*

1.   Administrative Hearing

On March 28, 2007, the ALJ held a second hearing.  *(Id.* at 277-86.)  Plaintiff testified that she had been unable to work due to chronic pain, frequent headaches and episodes of dizziness and loss of balance.  *(Id.)*

A vocational expert (VE), Ms. Nora Dunne, also testified.  She opined on two hypothetical questions posed by the ALJ.  (*Id.* at 286-89.)  The first reflected the limitations suggested by Dr. Moran; the second reflected the limitations suggested by Dr. Christoff.  (*Id.*)

The ALJ first asked the VE whether an individual with the following characteristics could perform any of Plaintiff's past relevant work:

> a person of Plaintiff's age, education, and past work experience, limited to light exertional level, sitting for a period of six of eight hours, with the ability to stand and/or walk for stretching every hour; standing and walking would be for as much as 35-45 minutes at a time where she'd have to alternate to the seated position for at least five to ten minutes before resuming a standing and walking position; otherwise standing and walking would be for as much as four to six hours a day. Posturally, she would be, there would be no climbing of ladders, ropes, or scaffolds.  Bending, stooping, crouching, and crawling would all be occasional, pushing and pulling with both upper and lower extremities would be limited to the exertional range.  She should avoid concentrated exposure to extreme cold and wetness.  She has some visual limitations due to the glass eye in her left eye, which would affect depth perception, causing limitations for unprotected heights or unprotected operating machinery, and no others.

*(Id.* at 287.)  The VE answered that that hypothetical person could perform all of Plaintiff's past relevant work.  *(Id.* at 288.*)*

The ALJ then added more limitations, to reflect the opinion of Dr. Christoff. Would there be jobs available in the national or regional economy for the same worker if, in addition to the limitations already mentioned, she had to:

> limit the amount of standing and walking to one hour total and two hours for sitting total, also having to lie down periodically during the day, exertional level would be at 10 pounds, she would miss more than two days per month and she ony had occasional use of her hands.

*(Id.* at 288.)  The VE answered "no."

    2.    <u>Administrative Decision</u>

On August 15, 2007, the ALJ issued his opinion ruling that Plaintiff was not disabled within the meaning of the Social Security Act.  Specifically, the ALJ found:

1. The claimant met the insured status requirements of the Social Security Act through June 30, 2007.

2. The claimant has not engaged in substantial gainful activity since November 15, 2004, the alleged onset date.

3. The claimant has the following severe impairments: mild osteoarthritis of the right hand and wrist; degenerative disc disease of the lumbar spine; monocular vision.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. The claimant has the RFC to lift, carry, push and pull up to 20 pounds occasionally and 10 pounds frequently; to stand and walk for four to six hours during a normal workday, in increments of 30 to 45 minutes at one time before alternating to a seated position for five to ten minutes; to sit for six hours during a normal workday, with accommodation to stand and/or walk and stretch every hour; with no requirements to climb ladders, ropes or scaffolds; with occasional bending, stooping, crouching and crawling; with avoidance of concentrated exposure to extreme cold and wetness; and with accommodation for limited depth perception as well as avoidance of exposure to unprotected heights and machinery.

6.  The claimant is capable of performing past relevant work as an Accounting Assistant, Account Officer, Compliance Officer, Accounting Manager, Reconciliation Specialist, and Vice President. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.  The claimant has not been under a "disability," as defined in the Social Security Act from November 15, 2004 through August 15, 2007.

(*Id.* at 14-24.) The ALJ also found Plaintiff lacked credibility.  He noted that although Plaintiff reports lower back pain, dizziness, and hip and knee pain, Plaintiff does not require an assistive device to ambulate.  (*Id.* at 21.) He also discredited Plaintiff's claims of mental health problems, citing no evidence to support the claim. (*Id.*)

The ALJ accorded great weight to the opinion of Dr. Moran, whose findings he stated were "consistent with the objective evidence of arthritic changes and early degenerative disc disease." Even so, the ALJ concluded Plaintiff was more restricted in her RFC than Dr. Moran's opinion would allow, citing to Plaintiff's visual limitations, environmental conditions, and postural capacities. *(Id.* at 22.)

The ALJ disregarded the opinion of treating physician Dr. Christoff, whose opinion of Plaintiff largely restricted her ability to work. The ALJ acknowledged that the opinions of treating physicians are entitled to controlling weight, but only if well supported by the medical evidence and not inconsistent with other substantial evidence. Citing to contradictory evidence, the ALJ was "not persuaded to accord any weight to Dr. Chrstoff's conclusions." (*Id.*)

3.      Plaintiff's Appeal

In February 2008, the Appeals Council denied Plaintiff's request for review, thereby rendering the ALJ's decision the final administrative decision for purposes of judicial review.  (*Id.* at 6-10.)  In May 2008, Plaintiff filed an amended complaint challenging the Commissioner's denial of disability benefits.  (Doc. # 4.)  Plaintiff's brief was filed on September 16, 2008.  (Doc. # 20.)  Defendant's brief was filed on October 24, 2008.  (Doc. # 21.)

### III.  ANALYSIS

**A.     STANDARD OF REVIEW**

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id.*

**B.     EVALUATION OF DISABILITY**

The qualifications for disability insurance benefits under the Social Security Act are that the claimant meets the insured status requirements, is less than sixty-five years of age, and is under a "disability."  *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2006).

The Commissioner has established a five-step process to determine whether a claimant qualifies for disability-insurance benefits. *See* 20 C.F.R. § 404.1520 (2008); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988). That process requires the adjudicator to consider whether a disability claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See id.*; *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). If a decision regarding the claimant's disability can be reached at any step in the process, further evaluation is unnecessary. *Williams*, 844 F.2d at 750.

**C.   DISABILITY DETERMINATION**

Plaintiff argues that the ALJ's determination of non-disability was erroneous because the ALJ improperly assessed Plaintiff's credibility and RFC at step four, and because the ALJ improperly gave more weight to Dr. Moran's opinion than Dr. Christoff's. Additionally, Plaintiff asks the court to consider new evidence.

1.     The ALJ's Assessment of Plaintiff's Credibility and RFC at Step Four

At step four, the claimant must show that the impairment or combination of impairments prevent her from performing her past work.  *Lax*, 489 F.3d at 1084.  It is also at this stage that the ALJ determines the claimant's RFC.  The RFC assessment is a task reserved for the ALJ, not doctors.  *Howard v. Barnhart,* 379 F.3d 945, 949 (10th Cir. 2004).

In the instant case, the ALJ considered all of Plaintiff's alleged ailments, even those for which there was minimal evidence.  They included difficulty walking, grasping, tingling and numbness in her feet, stiffness and swelling in her joints, problems with depression, alcohol, headaches, obesity, difficulty sleeping, and chest pain stemming from pericarditis.  The ALJ systematically reviewed the medical evidence, including Plaintiff's subjective complaints, in detailing his decision.  He weighed the contrasting opinions of Dr. Moran and Dr. Christoff, and, accounting for Plaintiff's visual limitations, environmental conditions, and postural capacities, established a more conservative RFC than that recommended by Dr. Moran.  *(*Doc. # 17 at 14-17, 22.)

ALJs are given substantial discretion in evaluating the evidence and gauging witness credibility.  *See Williams*, 844 F.2d at 755.  Given the deference accorded ALJs' credibility assessments and given the thoroughness of this ALJ's opinion, it is the Court's conclusion that the ALJ's assessment of Plaintiff's credibility and RFC is in accord with substantial evidence in the record and free of legal error.

2.      The ALJ's Regard for the Opinions of Dr. Moran and Dr. Christoff

The ALJ accorded more weight to the opinion of Dr. Moran than he did the opinion of Dr. Christoff.  Plaintiff contends the ALJ erred in so doing, by giving "undue weight" to Dr. Moran's opinion.  In support of her argument, Plaintiff cites to the disparity in time spent with each physician, 30 minutes with Dr. Moran versus 2 1/2 hours with Dr. Christoff.  Plaintiff also argues Dr. Moran's evaluation was incomplete because Dr. Moran did not consider Plaintiff's ongoing complaints, specifically, various medical reports dated July 2004.  (Doc. # 20 at 2.)  Plaintiff relays portions of her medical record as evidence that the ALJ's reliance on Dr. Moran's opinion was error.  *See id.*

In reciting at length various portion of her medical record, Plaintiff is in essence asking the Court to reweigh the evidence.  (*See* Doc. # 20.)  The Court, however, cannot reweigh the evidence.  *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000)*.* Its review is limited to determining whether the ALJ's factual findings are supported by substantial evidence and whether his decision is free of legal error.  *Frantz v. Astrue*, 509 F.3d 1299, 1300 (10th Cir. 2007).

In contrast to his treatment of Dr. Moran's opinions, the ALJ disregarded the opinion of Dr. Christoff.  Given Dr. Christoff's status as a "treating physician" under the Social Security Act, this was a significant move and one the Court must carefully review.  *See* 20 C.F.R. § 404.1527.

The opinion of a treating physician is generally given controlling weight.  However, an ALJ can disregard that opinion, but only if it is contradicted by other

11

medical evidence or otherwise inconsistent with substantial evidence in the record. *See Marshall v. Astrue*, Slip Copy, 2009 WL 595945 (10th Cir. 2009); 20 C.F.R. § 404.1527(d)(2).

If a treating physician's opinion is not given controlling weight, the ALJ must "give good reasons" and consider a list of regulatory factors. *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); 20 C.F.R. § 404.1527(d)(2). These factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1301. However, an ALJ need not discuss all the factors, so long as he considers them. Given these requirements, the ALJ's decision must be specific enough to make clear to subsequent reviewers the weight given to the treating physician's opinion and reasons for that weight. *See id.* at 1300-01.

The ALJ disregarded Dr. Christoff's opinion only after concluding it was inconsistent with the weight of other evidence. Moreover, he provided specific legitimate reasons for disregarding Dr. Christoff's opinion. (Doc. # 17 at 22.) First, he detailed the disparity between the medical evidence and Dr. Christoff's conclusions.

He then noted Dr. Christoff's reliance on Plaintiff's subjective complaints, as well as Dr. Christoff's own comments regarding the inconsistent nature of some of Plaintiff's complaints. *Id.* As the Tenth Circuit has noted, an ALJ may disregard a doctor's opinion when it is based on a claimant's subjective complaints. *See Brescia v. Astrue*, 287 Fed.Appx. 626, 630 (10th Cir. 2008); *Heinritz v. Barnhart*, 191 Fed.Appx. 718, 723 (10th Cir. 2006).

The ALJ's decision to favor Dr. Moran's opinions over Dr. Christoff's is supported by substantial evidence in the record. Other medical evidence, especially the equivocal findings of Plaintiff's July 2004 visits with Dr. Bower and Dr. Chryssos, supports Dr. Moran's mild conclusions instead of Dr. Christoff's extreme ones. In addition, the ALJ applied the correct legal principles in making that decision.

3.      Plaintiff's New Evidence

Plaintiff supports her arguments by describing several visits with Dr. Christoff which occurred *after* the ALJ issued his opinion; that is, Plaintiff wants the court to consider evidence that was not before the ALJ when he issued his decision. The governing law dictates the parameters of our review. As a rule of thumb, "[t]he ALJ's decision should [be] evaluated based solely on the reasons stated in the decision." *See Robinson v. Barnhardt*, 366 F.3d 1078 (10th Cir. 2004). Specifically, new evidence should not be considered unless it is (a) new, (b) material and (c) related to the period on or before the date of the ALJ decision. *See Chambers v. Barnhardt*, 389 F.3d 1139, 1142 (10th Cir. 2004) (internal citations omitted). Aside from the question of materiality,

the Court is precluded from considering Plaintiff's new evidence because it does not relate to the period on or before the date of the ALJ decision. Because it is sympathetic to Plaintiff's situation, the Court encourages Plaintiff to file a new claim based on the new evidence.

**D.     CONCLUSION**

The ALJ's denial of Plaintiff's applications for disability benefits is supported by substantial evidence in the record and free of legal error. Accordingly, the Commissioner's decision is AFFIRMED.

DATED:  May   18  , 2009

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge